Natasha Prinzing Jones
Tracey Neighbor Johnson
Karston E. Erickson
BOONE KARLBERG P.C.
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
npjones@boonekarlberg.com
tnjohnson@boonekarlberg.com
kerickson@boonekarlberg.com
*Attorneys for Defendants City of Missoula, Missoula City Council & Mayor Andrea Davis.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| SHAWN S. MCKENZIE,<br><br>        Plaintiff,<br><br>v.<br><br>POVERELLO CENTER, INC., ET. AL.<br><br>        Defendants. | CV-25-97-KLD<br><br>**DEFENDANT CITY OF MISSOULA'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iv

EXHIBIT LIST ................................................................................................ vii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 1

STANDARD OF REVIEW .................................................................................... 4

ANALYSIS ......................................................................................................... 6

I.   McKenzie fails to plead sufficient facts to establish Poverello or Black
Night's actions were "state actions." ................................................................ 6

   A.   McKenzie fails to sufficiently plead any City policy caused his alleged
constitutional violations. ..................................................................................... 6

   B.   McKenzie fails to sufficiently plead Poverello or Black Knight were
performing a traditional and exclusive public function. ..................................... 8

   C.   McKenzie fails to sufficiently plead Poverello or Black Knight's actions
were due to government compulsion. ................................................................. 10

   D.   McKenzie fails to sufficiently plead Poverello or Black Knight were
state actions by joint action or a government nexus. ........................................ 11

II.   McKenzie's Complaint fails to state a Fourth Amendment claim upon which
relief can be granted. ......................................................................................... 14

   A.   McKenzie consented to the search of his bed and locker. ...................... 15

   B.   Officer Doe's interaction with McKenzie was a legally permissible *Terry*
stop… ................................................................................................................ 17

III. McKenzie's Complaint fails to state a Fourteenth Amendment Due Process claim upon which relief can be granted. .............................................................19

IV. McKenzie's Complaint fails to state a Fourteenth Amendment Equal Protection claim upon which relief can be granted.............................................21

V.   McKenzie fails to sufficiently plead facts to establish municipal liability. ..22

VI. McKenzie's Montana constitutional claims fail for failure to state claims...24

VII. McKenzie's injunctive relief claims should be dismissed as moot. .............28

CONCLUSION .......................................................................................................28

CERTIFICATE OF COMPLIANCE ......................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

# TABLE OF AUTHORITIES

## Cases

*Allen v. City of Portland*, 73 F.3d 232 (9th Cir. 1995).................................... 17, 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................... 5, 7, 16, 24

*Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).....................................24

*Board of Regents v. Roth*, 408 U.S. 564 (1972).....................................20

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001).....................................12

*Brock v. Roadway Express, Inc.*, 481 U.S. 252 (1987) .....................................19

*Bumper v. North Carolina*, 391 U.S. 543 (1968).....................................15

*Centereach Rentals, Inc. v. Town of Huntington*, 150 Misc. 2d 462, 574 N.Y.S.2d 636 (N.Y. Sup. Ct. 1991) .....................................10, 11

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .....................................21

*Collins v. City of Harker Heights*, 503 U.S. 115 (1992).....................................23

*Doe No. 3 v. Mont. State Univ.*, 2020 U.S. Dist. LEXIS 239799 (D. Mont. Dec. 21, 2020) .....................................5

*Dorwart v. Caraway*, 815 P.2d 236 (Mont. 1991) .....................................26

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008).....................................22

*Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916 (9th Cir. 2011) 13, 14

*Gabriel v. Gray*, CV 24-118-M-JTJ, 2024 U.S. Dist LEXIS 219628 (D. Mont. 2024) .....................................10

*Gregory v. State*, CV-20-51-GF-BMM, 2022 U.S. Dist. LEXIS 21424 (D. Mont. 2022) .....................................27

*Hernandez v. Skinner*, 383 F. Supp. 3d 1077 (D. Mont. 2019).....................................17, 19

*Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019).....................................23

*Jean v. HRA*, 24-CV-5401 (LTS), 2024 U.S. Dist. LEXIS 224996 (S.D.N.Y. 2024)9

*Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004).....................................22

*Jensen v. Lane Cnty.*, 222 F.3d 750 (9th Cir. 2000).....................................11

*Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000 (9th Cir. 2011) ...................... 5, 7, 16

*Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003) ............................................ passim

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ...................................................28

*Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002) ...................................................................8

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).................................. 6, 8, 10, 14

*Monell v. Dep't of Soc. Servs.* 436 U.S. 690 (1978)..................................................23

*Morillo v. City of New York*, 178 A.D.2d 7 (N.Y. App. Div. 1992).........................20

*Navarette v. California*, 572 U.S. 393, (2014).........................................................18

*Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ......................12

*Peschel v. City of Missoula*, 664 F.Supp.2d 1149 (D. Mont. 2009).........................26

*Portman v. Cnty. of Santa Clara*, 995 F.2d 898 (9th Cir. 1993) .............................19

*Prager University v. Google LLC*, 951 F.3d 991(9th Cir. 2020) ...............................6

*Probst v. Central Ohio Youth Ctr.*, 511 F. Supp. 2d 862 (S.D. Ohio 2007) .............21

*Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) .............................................................8

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) ....................................................15

*Smith v. United Caring Servs.*, No. 25-1068, No. 25-1211, 2025 U.S. App. LEXIS
    14663 (7th Cir. 2025)..............................................................................................9

*Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999). 6, 8, 10, 14

*Tackett v. U.S. Dep't of Health and Hum. Serv.*, CV-21-37-M-BMM, 2022 U.S.
    Dist. LEXIS 58551 (D. Mont. 2022) ....................................................................11

*Terry v. Ohio*, 392 U.S. 1 (1968).............................................................................18

*Thomas v. Sanders Cnty*, CV 24-58-M-KLD, 2025 U.S. Dist. LEXIS 187147 (D.
    Mont. 2025)............................................................................................................23

*Thornton v. City of St. Helens*, 425 F.3d 1158 (9th Cir. 2005) ...............................22

*U.S. v. Washington*, 387 F.3d 1060 (9th Cir. 2004)..................................................17

*United States v. Berrington*, 2017 U.S. Dist. LEXIS 97527 (D. Mont. 2017) ........15

*United States v. Enslin*, 327 F.3d 788 (9th Cir. 2003).............................................15

*United States v. Ramos-Gonzales*, 2025 U.S. Dist. LEXIS 115571 (D. Mont. 2025) ....................................................................................................................16

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ..........................................28

*Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950 (9th Cir. 2008) ..................12

*Washington Legal Clinic for the Homeless v. Barry,* 107 F.3d 32 (D.C. Cir. 1997)20

*Wilson v. State*, 249 P.3d 28, 33 (Mont. 2010) ......................................................27

**Statutes**

Mont. Code Ann. § 45-8-328 ...................................................................................26

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................4, 5, 28

Fed. R. Civ. P. 12(d) ...............................................................................................28

Fed. R. Civ. P. 8(a)(2)..........................................................................................4, 25

Rule 201(b) of the Federal Rules of Evidence........................................................28

**Constitutional Provisions**

Article II, §§ 10, 16, and 26 .............................................................................26, 27

Article II, §§ 4, 10, 11, 12, 16, 17, 26 (trial by jury) .......................................25, 27

U.S. Const. amend. IV ............................................................................................17

**EXHIBIT LIST**

Description

Exhibit A    March 7, 2025, letter from Missoula City Mayor Angela Davis

## INTRODUCTION

Plaintiff Shawn S. McKenzie ("McKenzie") filed a Complaint for Declaratory, Injunctive and Monetary Relief ("Complaint") against various entities and individuals, including the City of Missoula ("City").  McKenzie alleges actions taken by private entities and a Missoula Police Department ("MPD") Officer violated his U.S. and Montana constitutional rights.  McKenzie's various allegations are all without merit and his Complaint should be dismissed in its entirely.

## BACKGROUND

The Poverello Center, Inc. ("Poverello") is, upon information and belief, a private non-profit organization which provides education, advocacy, and a multitude of services to people struggling with poverty in Missoula, Montana.

Upon information and belief, Black Knight Security and Investigations, LLC ("Black Knight") is a private, limited liability company with a principal address in Missoula.

The following background is taken from McKenzie's Complaint.  Although the City disputes McKenzie's allegations, they are assumed true for the purposes of a motion to dismiss.

The Johnson Street Temporary Emergency Shelter ("Shelter") is located at 1919 North Ave W, Missoula, on City-owned property. The Shelter "enforces a

categorical 'no firearms' policy; the City uses Black Knight Security and Investigation Services LLC guards to enforce it." (Doc. 2 at 3.) The "Shelter and City Council jointly draft and enforce rules" and the "City conditions funding on compliance with unconstitutional policies" (Doc. 2 at 5.)

Since early 2025, McKenzie stayed at the Shelter where he was a "scheduled volunteer and resident, with a permanent bed and free, lockable locker, creating a de facto home." (Doc 2 at 3; 5.) At some point prior to March 14, 2025, McKenzie took possession of a "locked bag" belonging to another resident, Jeff McCook ("McCook"). (Doc. 3 at 3.) McKenzie neither opened nor inspected the bag, nor knew of its contents. (Doc. 3 at 3.)

On March 14, 2025, a Poverello employee ("John Doe No. 1") and two Black Knight employees ("John Does Nos. 2 & 3") demanded a "warrantless search" of McKenzie's locker. McKenzie objected and invoked his Fourth Amendment rights. After McKenzie's objection, John Does Nos. 1-3 left. McKenzie then returned McCook's bag to McCook, located John Does Nos. 2-3 and "under duress, emptied his locker and bags and searched his bed area." (Doc. 3 at 3.)

John Does Nos. 1-3 then issued to McKenzie a notice of permanent exclusion from the Shelter for "suspicion of possessing a firearm, with no written notice, paperwork or hearing." Another Poverello employee ("John Doe No. 4"),

refused to issue McKenzie with "written exclusion documentation and appeal guidance" and stated that no appeal existed for firearm-based exclusions. (Doc. 3 at 3.)

Later that same day, on March 14, a MPD officer ("Jane Doe No. 2" or "Officer Doe") approached McKenzie as he was packing. Officer Doe:

> "seized his wrist, escorted him to his bed, and interrogated him without reasonable suspicion, accusing him of bringing a gun. [McKenzie] invoked his right to remain silent. At no point did she conduct a pat-down or search. The officer persisted until [McKenzie] asked if he was free to leave. Once [McKenzie] was released, the officer informed him she had a firearm in her possession."

(Doc. 2 at 4).

McKenzie believes the firearm referenced by Officer Doe was McCook's firearm. A "police report" indicated McCook informed Officer Doe that the firearm belonged to McKenzie and that McKenzie had shown McCook the firearm on the morning of March 14, 2025. (Doc. 2 at 4.) McKenzie disagrees with these claims by McCook.

On June 24, 2025, McKenzie brought this lawsuit and alleged the following counts against Defendants, pursuant to 42 U.S.C. § 1983 and corresponding Article II sections of the Montana constitution: (1) a Second Amendment violation and an Article II § 12 violation (for Poverello's blanket ban on firearms within the Shelter); (2) Fourth Amendment search and seizure violations, plus Article II, §§ 4, 11, and 17 violations (for Black

Knight's search of McKenzie's bed and locker and for the MPD officer's "seizure" of McKenzie'); (3) a Fourteenth Amendment Due Process and Article II §§ 10 and 26 violation (for the Shelter exclusion's lack of process); (4) *Monell* liability; and (5) a Fourteenth Amendment Equal Protection (as a "class of one") and an Article II § 16 violation. (Doc. 2 at 4-6.)

In his Prayer for Relief, McKenzie sought (1) declarations that the Defendants' conduct violated his Second, Fourth and Fourteenth Amendment rights and the Montana Constitution, (2) the enjoinment of any policy prohibiting lawfully possessed firearms in the Shelter; (3) the enjoinment of Defendants from enforcing "exclusion security practices without individualized suspicion or a rational basis"; (4) compensatory, nominal and punitive damages; (5) award of reasonable attorney's fees and costs under 43 U.S.C. § 1988, and (6) any other further relief the Court deems just and proper. (Doc. 2 at 6.)

This motion seeks to dismiss all of McKenzie's claims.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2)." *Doe No. 3 v. Mont. State Univ.*, 2020 U.S. Dist. LEXIS

239799, at *8 (D. Mont. Dec. 21, 2020). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint's allegations must cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

There is a two-step procedure to determine whether a complaint's allegations cross that line. *Id.,* at 678-679. First, a Court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Id.*, at 679-680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id.* at 679, 681. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. *Id.* at 678.

Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**ANALYSIS**

## I. McKenzie fails to plead sufficient facts to establish Poverello or Black Night's actions were "state actions."

As private entities, Poverello and Black Night are not ordinarily subject to the Constitution's constraints. *See Prager University v. Google LLC*, 951 F.3d 991, 995-99 (9th Cir. 2020). To demonstrate that Poverello or Black Knight qualify as a "state actor" for constitutional purposes, McKenzie must satisfy two steps. First, "some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible" must have caused Poverello or Black Knights' alleged constitutional violations. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Put simply, "the deprivation must result from a governmental policy." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999). Second, McKenzie must demonstrate that Poverello or Black Knight "may fairly be said to be a state actor." *Lugar*, 457 U.S.at 937.

McKenzie fails to satisfy either step in this "state actor" analysis. Thus, his Second Amendment, Fourth Amendment (with regards to the alleged search by Black Knight), and Fourteenth Amendment claims against the City should be dismissed.

### A. McKenzie fails to sufficiently plead any City policy caused his alleged constitutional violations.

First, McKenzie fails to sufficiently plead that any City policy caused his

alleged constitutional violations by Poverello or Black Knight.  McKenzie attempts

to use various broad allegations to link the City to Poverello's no-firearms policy:

(1) that Poverello enforces a categorical 'no firearms' policy and that the City uses

Black Knight to enforce it (2) that Poverello and the City Council jointly draft and

enforce rules; (3) that the City's contract, "board directives" and "Mayor's

ratification evidence adoption"; and (4) the "City conditions funding on

compliance with unconstitutional policies" (Doc. 2 at 1, 3, 5.)

But these expansive and imprecise allegations, even accepted as true, are not

sufficient to satisfy the pleading requirements to satisfy the first step in establishing

state action – that the deprivations were caused by a City policy.  McKenzie fails to

point to any actual City policy which caused his alleged constitutional violations.

His facts are conclusory allegations and unwarranted inferences which are "merely

consistent with" establishing the City's liability and stop short of  the line between

possibility and plausibility of entitlement to relief.  *Johnson*, 653 F.3d at 1010.

*Iqbal*, 556 U.S. at 678.   Therefore, even under the liberal pleading requirements

for pro se plaintiffs, McKenzie's Complaint fails to sufficiently allege state action

in this case.

Even if McKenzie did sufficiently plead the first step in the "state actor"

analysis (and he does not), McKenzie fails to demonstrate that Poverello or Black

Knight "may fairly be said to be a state actor."  When addressing whether a private

party acted under color of law, courts "presume that private conduct does not constitute governmental action." *Sutton*, 192 F.3d at 835. Four tests may be utilized to demonstrate private entities are state actors: (1) the public function test, (2) governmental compulsion or coercion, (3) government nexus test, and (4) the joint action test. *Id., (citing Lugar,* 457 U.S. at 939).

Although these tests are broadly cited in the Complaint, McKenzie fails to adequately allege sufficient facts to demonstrate Poverello or Black Knight are state actors under any of the tests, and thus all claims against the City based on actions by Poverello or Black Knight should be dismissed.

### B. McKenzie fails to sufficiently plead Poverello or Black Knight were performing a traditional and exclusive public function.

Under the "public function" test, "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Kirtley v. Rainey*, 326 F.3d 1088, 1093 (9th Cir. 2003) (*quoting Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002)). Crucially, the central question is whether the function performed has been "traditionally the *exclusive* prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (emphasis in original) (*quoting Jackson v. Metropolitan Edison Co.*, 419 US. 345 (1974). The Supreme Court has stressed the "very few" functions fall into this category. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 810 (2019).

McKenzie's reliance on the public function test is based on a single statement: "Shelter services are traditional government functions."[1]  But this legal conclusion is not supported by McKenzie's cited case, which did not actually concern or address the homeless, operating homeless shelters or whether providing shelter services are a traditional government function., *Probst v. Central Ohio Youth Ctr.*, 511 F. Supp. 2d 862 (S.D. Ohio 2007) (providing mental healthcare in prisons is an obligation of the state, and private entities which perform such services are state actors).

Although operating homeless shelters is a critical public service, it is not a function performed exclusively by the state.  *Rendell-Baker*, 457 U.S at 842. Instead, operating a homeless shelter more closely resembles operating a nursing home or special education facility - caretaking functions that the Supreme Court has held are not exclusive to the government.  *Manhattan*, 587 U.S. at 810.  While the Ninth Circuit has not directly addressed this issue, Seventh and Second Circuits courts have repeatedly held that operating homeless shelters is not a public function for § 1983 purposes.  *See*, *e.g.*, *Smith v. United Caring Servs.*, No. 25-1068, No. 25-1211, 2025 U.S. App. LEXIS 14663 (7th Cir. 2025); *Jean v. HRA*, 24-CV-5401 (LTS), 2024 U.S. Dist. LEXIS 224996 (S.D.N.Y. 2024).

---

[1] McKenzie does not allege nor make any citations that Black Knight was performing a traditional government function.

Thus, operating a homeless shelter is not traditionally and exclusively a government function, and McKenzie fails to sufficiently plead that Poverello or Black Knight may be fairly said to be state actors under the public function test. *Lugar*, 457 U.S. at 937.

C. **McKenzie fails to sufficiently plead Poverello or Black Knight's actions were due to government compulsion.**

Under the "governmental coercion or compulsion" test, the court considers "whether the coercive influence or 'significant encouragement' of the state effectively converts a private action into a government action." *Kirtley*, 326 F.3d at 1094 (*quoting Sutton*, 192 F.3d at 826, 836-37). McKenzie attempts to satisfy this test with a mere two sentences in his complaint: "City conditions funding on compliance with unconstitutional policies" and "Municipal Ratification: City ratifies shelter's security practices by funding and acceptance. *Centereach Rentals, Inc. v. Town of Huntington*, 150 Misc. 2d 462, 574 N.Y.S.2d 636 (N.Y. Sup. Ct. 1991)." (Doc. 2 at 5-6.)

First, McKenzie's conclusory allegation that the City conditions funding on unconstitutional policies is not sufficient to establish that there is any coercive influence or signification encouragement by the City on _any_ of Poverello or Black Knight's actions, much less those actions McKenzie alleges resulted in constitutional violations. *See Gabriel v. Gray*, CV 24-118-M-JTJ, 2024 U.S. Dist LEXIS 219628 (D. Mont. 2024) (conclusory allegation that defendants were

"acting under the color of state law" insufficient to establish defendants engaged in a public function); *Tackett v. U.S. Dep't of Health and Hum. Serv.*, CV-21-37-M-BMM, 2022 U.S. Dist. LEXIS 58551 (D. Mont. 2022) (no coercion when plaintiffs only implied coercion based on Medicaid reimbursements from the government to defendant hospitals) (*vacated in part, aff'd in part, rev'd. in part, on grounds unrelated to coercion test*, No. 22-35326, 2024 U.S. App. LEXIS 13423 (9th Cir. 2024).

Second, *Centereach* did not involve § 1983 or the state action test now under discussion. 150 Misc. 2d 462 (retention and use of the woodchipper by a defendant municipality constituted the ratification of the contract to pay for the woodchipper's use). Thus, "Municipal Ratification" is irrelevant to this case and should be disregarded by the Court.

Therefore, McKenzie fails to sufficiently plead Poverello or Black Knight were state actors under the government compulsion test.

### D. McKenzie fails to sufficiently plead Poverello or Black Knight were state actions by joint action or a government nexus.

Due to the similarity between the tests, courts have treated the joint action and nexus tests in one analysis. *See, e.g., Jensen v. Lane Cnty*., 222 F.3d 750 (9th Cir. 2000). McKenzie's Complaint does not specifically cite the government nexus test. However, out of an abundance of caution, the City will apply McKenzie's

various arguments to address the nexus test in conjunction with the joint action test.

Under the "government nexus" test, the court asks whether "there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley,* 326 F.3d at 1095 (*quoting Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001)). The Ninth Circuit has articulated four factors to consider when determining whether entwinement exists: (1) whether the organization is primarily made up of state institutions; (2) whether state officials control the organization's decision making; (3) whether state institutions largely generate the organization's funds; and (4) whether the organization is acting in place of a traditional state actor. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008).

Under the joint action test, a court will consider whether "the state has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity" and "knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093 (*quoting Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995)). The joint action test is not satisfied absent willful joint participation where the state was in "a position of interdependence with the private

entity." *Florer v. Congregation Pidyon Shevuyim*, N.A., 639 F.3d 916, 927 (9th Cir. 2011) (*quoting Kirtley*, 326 F.3d at 1093).

In support of these tests, McKenzie states: "Shelter and City Council jointly draft and enforce rules" and the Shelter "enforces a categorical 'no firearms' policy; the City uses Black Knight Security and Investigation Services LLC guards to enforce it."

As stated above, McKenzie's facts, even if accepted as true, are simply conclusory allegations and inferences which do not satisfy the pleading standard necessary to establish state action by Poverello or Black Knight under the nexus and joint action tests.

First, under the nexus test, McKenzie fails to allege that there is such a close nexus between the City and Poverello or Black Knight that the private entities' behavior private behavior may be fairly treated as that of the City. *Kirtley*, 326 F.3d at 1095. McKenzie does not allege that either Poverello or Black Knight is made up of City officials, that City officials control the entities' decision making, nor that the City largely generates the entities' funds. As established above, Poverello is not taking the traditional place of the City by operating a homeless shelter and McKenzie does not allege that Black Knight is taking over the City's traditional place by acting as security at the Shelter. He therefore fails to establish either Poverello or Black Knight are a state actor under the nexus test.

Nor are McKenzie's pled facts sufficient to meet the joint action test. Even accepting his facts as true, they do not demonstrate a "a position of interdependence" between the City with Poverello or Black Knight, nor that the City was in "willful participation" with either entity regarding the alleged actions that gave rise to McKenzie's claims. *Kirtley*, 326 F.3d at 1093; *Florer*, 639 F.3d at 927. Lastly, McKenzie fails to plead <u>any</u> facts that the City "knowingly accepts the benefits derived from unconstitutional behavior." *Kirtley*, 326 F.3d at 1093. As such, McKenzie fails to establish either Poverello or Black night may be fairly said to be a state actor under the joint action test.

For the reasons stated above, McKenzie's facts fail to adequately plead that Poverello and Black Knights actions resulted from a governmental policy. *Sutton*, 192 F.3d at 835 (9th Cir. 1999). Nor do his pled facts establish that either Poverello or Black Knight "may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937. As such, McKenzie fails to establish that his Second Amendment, Fourth Amendment (as to the alleged search by Black Knight) or Fourteenth Amendment claims were due to state actions, and those claims against the City, Mayor Davis and the City Council, should be dismissed.

**II.    McKenzie's Complaint fails to state a Fourth Amendment claim upon which relief can be granted.**

McKenzie's alleges two separate Fourth Amendment violations: (1) an illegal search conducted by Black Knight personnel, and (2) an illegal seizure by

14

an MPD officer, Officer Doe. However, McKenzie's pled facts do not actually support such search or seizure claims. Instead, McKenzie consented to the search of his locker and bed and his "seizure" by Officer Doe was a permissible *Terry* stop based on reasonable suspicion. Both allegations are thus insufficiently pled and should be dismissed for failure to state a claim.

**A.    McKenzie consented to the search of his bed and locker.**

Consent to search is a well-established exception to the Fourth Amendment's prohibition of warrantless searches." *United States v. Berrington*, 2017 U.S. Dist. LEXIS 97527 (D. Mont. 2017) (*citing United States v. Enslin*, 327 F.3d 788, 793 (9th Cir. 2003)). Whether consent to search was voluntarily given is "to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). It is the government's burden to prove that the consent was freely and voluntarily given. *See Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

The Ninth Circuit utilizes five factors to determine the voluntariness of consent to a search: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that they had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained. *United*

*States v. Ramos-Gonzales*, 2025 U.S. Dist. LEXIS 115571 *9 (D. Mont. 2025) (listing cases).

By McKenzie's own retelling, he voluntarily consented to Black Knight's search of his bed and locker. McKenzie states that Poverello and Black Knight employees demanded to search his bed and locker. McKenzie objected and invoked his Fourth Amendment rights. After McKenzie's objection, John Does Nos. 1-3 left. Thus, John Does 1-3 respected McKenzie's assertion of his Fourth Amendment rights. After he returned McCook's bag, McKenzie "then located John Doe Nos. 2-3 [Black Knight employees] and, under duress, emptied his locker and bags and searched his bed area." (Doc. 3 at 3.).

This is not a warrantless search – after originally invoking his Fourth Amendment rights, McKenzie went and found John Does 2-3 and emptied his locker and bags for them. By his own admission, he voluntarily consented to the search.

McKenzie's statement that the later "search" occurred "under duress" is a conclusory allegation and inference which does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. 662; *Lucent Techs*, 653 F.3d at 1010. Standing alone, the phrase "under duress" does not establish that his consent was involuntary under the five factors identified by the Ninth Circuit. McKenzie was not in police custody and the Black

16

Knight employees did not have drawn weapons.  Further, McKenzie obviously knew he could object to the search given his prior successful Fourth Amendment invocation.   Thus, under the facts alleged, McKenzie clearly voluntarily consented to the search.

As such, even assuming he could establish state action, McKenzie's Fourth Amendment claim against the City based upon Black Knight's actions should be dismissed, as the Fourth Amendment was not violated.

**B.   Officer Doe's interaction with McKenzie was a legally permissible *Terry* stop.**

Even assuming McKenzie's interaction with MPD Officer Doe invoked the Fourth Amendment, as alleged by McKenzie, his Complaint demonstrates his interaction with Officer Doe was a legally permissible.

The Fourth Amendment provides people the right to be free from unreasonable seizures. *See* U.S. Const. amend. IV.  A seizure occurs when a police officer, through coercion, "physical force, or a show of authority, in some way restricts the liberty of a person." *U.S. v. Washington*, 387 F.3d 1060, 1068 (9th Cir. 2004).

There are generally two kinds of seizures: brief investigative stops and arrests.  *Allen v. City of Portland*, 73 F.3d 232, 235 (9th Cir. 1995).  An arrest is a more significant intrusion than a brief investigative stop. *Hernandez v. Skinner*, 383 F. Supp. 3d 1077, 1083 (D. Mont. 2019).  A brief investigative stop, sometimes

called a *Terry* stop, occurs when a police officer stops someone for a limited duration to ask questions. *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  A brief investigative stop requires reasonable suspicion, defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, (2014) (*citing Terry*, 392 U.S. at 21-22).

Despite McKenzie's conclusory allegation that Officer Doe did not have reasonable suspicion to conduct a *Terry* stop, a "police report" cited by McKenzie in the Complaint indicates otherwise.  According to McKenzie, the police report indicated "Jeff McCook informed the officer that the gun belonged to [McKenzie] and that [McKenzie] had shown Jeff the gun that morning."  (Doc. 2 at 5.) McKenzie may cast aspersions on McCook's reliability and trustworthiness, but he asserts no facts which support these aspersions should have been known by Officer Doe.

Thus, accepting McKenzie's allegations as true, Officer Doe had reasonable suspicion to briefly detain McKenzie to ask about the firearm – which is exactly what Officer Doe did.  By McKenzie's own admission, Officer Doe did not conduct a pat-down or search, and after McKenzie invoked his right to remain silent and asked if he was free to leave, McKenzie was "released."

Therefore, McKenzie's interaction with Officer Doe was not an arrest but a legally permissible *Terry* stop.  Officer Doe's "seizure" of McKenzie's wrist did

not amount to a restraint on his freedom of movement to the degree it was a formal arrest. *Hernandez*, 383 F. Supp. 3d at 1083. A reasonable person, under McKenzie's circumstances, would feel free to leave during the interaction with Officer Doe, as evidenced by the fact that McKenzie was "released" after invoking his Fourth Amendment rights and asking if he was free to go. *Allen*, 73 F.3d at 235. Thus, McKenzie fails to sufficiently plead a Fourth Amendment search or a Fourth Amendment seizure violation, and his Fourth Amendment claim against the City should be dismissed in its entirety.

### III. McKenzie's Complaint fails to state a Fourteenth Amendment Due Process claim upon which relief can be granted.

McKenzie fails to sufficiently plead that he was deprived of a constitutionally protected property interest. Therefore, his Fourteenth Amendment Due Process claim fails and should be dismissed.

"A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Individuals are entitled to due process only if they have a constitutionally protected property interest. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 260 (1987). Property interests are created by state law and may include "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*,

408 U.S. 564, 577 (1972). To have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for [the benefit]. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* If a person has no "legitimate claim of entitlement" to the property affected by a governmental decision, the Due Process Clause is not implicated. *Id.*

Here, McKenzie fails to sufficiently plead he was deprived of any constitutionally protected property interest. McKenzie's conclusory allegation that "Shelter residency and locker constitute a property interest" is not supported by any Montana state statutory or common law – not even by the cases McKenzie cites to support the contention. *Washington Legal Clinic for the Homeless v. Barry,* 107 F.3d 32 (D.C. Cir. 1997) (homeless families lacked the 'legitimate claim of entitlement' necessary to create a constitutionally protected property right in shelter residency); *Morillo v. City of New York*, 178 A.D.2d 7 (N.Y. App. Div. 1992) (procedure to determine if illegal squatters could be considered to rent the space they occupied did not create a substantive property right for the squatters).[2]

---

[2] McKenzie's originally case citation for *Morillo* was 524 F. Supp. 2d 314 (S.D.N.Y. 2007), which refers to *Trump International Hotel Tower v. Carrier Corporation*, a case which concerned negligence, breach of warranty, and breach of contract, not due process.

McKenzie fails to allege, claim or specify any Montana state law, rule or understanding which supports a legitimate claim to entitlement to a bed and locker in the Shelter.[3]  Thus, he fails to adequately plead he was deprived of any constitutionally protected property interest, and his Fourteenth Amendment Due Process claim against the City should be dismissed.

## IV.     McKenzie's Complaint fails to state a Fourteenth Amendment Equal Protection claim upon which relief can be granted.

McKenzie similarly fails to sufficiently plead as a "class of one" that he was intentionally treated differently from others similarly situated and that there was no rational basis for that different treatment.  Therefore, his Fourteenth Amendment Equal Protection claim against the City should be dismissed.

The Fourteenth Amendment's Equal Protection Clause prohibits states from denying any person the equal protection of the laws, with the general objective "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Plaintiffs seeking to succeed in a class-of-one claim bear the burden to prove: (1) they were intentionally treated differently than others similarly situated; and (2) no rational basis exists for the difference in treatment.  *Thornton v. City of*

---

[3] The closest McKenzie comes is his conclusory statement "Shelter services are traditional government functions. *Probst v. Central Ohio Youth Ctr.*, 511 F. Supp. 2d 862 (S.D. Ohio 2007)." (Doc. 2 at 5.)  But as stated above, that was not Probst's holding and the case did not concern homeless shelters.

*St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005); *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1213-14 (10th Cir. 2004) (finding that it is imperative for a class-of-one plaintiff to provide a "specific and detailed account" of other individuals' preferred treatment so that the court may determine "who was similarly situated with whom"). A class-of-one plaintiff also must show that the difference in treatment resulted from non-discretionary state action. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).

Here, McKenzie fails to allege *any* facts which support an argument that similarly situated individuals within the Shelter were not excluded from the Shelter for suspicion of possessing a firearm. Even if such facts were in the Complaint, McKenzie further fails to provide adequate facts to allege that there was no rational basis for the difference in treatment. Lastly, he does not adequately plead that any difference in treatment resulted from non-discretionary state action. Thus, on all three points, McKenzie fails to adequately plead sufficient facts to support an Equal Protection claim upon which relief can be granted. As such, this claim should also be dismissed.

## V. McKenzie fails to sufficiently plead facts to establish municipal liability.

Even if McKenzie did adequately plead Second, Fourth and Fourteenth Amendment violations (and he does not), McKenzie fails to adequately plead sufficient facts to demonstrate municipal liability by the City and his claims should

thus be dismissed.  *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (whether a city is responsible for a constitutional violation is a separate analysis from whether a constitutional violation caused plaintiff's harm).

To trigger municipal liability, the underlying constitutional deprivation must be the result of: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602-03 (9th Cir. 2019) (*citing Monell v. Dep't of Soc. Servs.* 436 U.S. 690-695 (1978)).  The plaintiff must additionally allege facts to support a reasonable inference that the execution of a policy, custom, or practice of the municipality was the "moving force" that resulted in a constitutional deprivation. *Thomas v. Sanders Cnty*, CV 24-58-M-KLD, 2025 U.S. Dist. LEXIS 187147 *4-5 (D. Mont. 2025) (*citing Monell* 436 U.S. at 691-692).  McKenzie references official policies and deliberate indifference (once) but fails allege sufficient facts to support a reasonable inference that either were the "moving force" behind his constitutional deprivations.  His claims should thus be dismissed.

McKenzie's uses broad allegations which attempt to connect the City with his alleged constitutional violations (i.e. "the City uses Black Knight Security and Investigation Services LLC guards to enforce [the no firearms policy]"; "Shelter and City Council jointly draft and enforce rules"; "City and County contract, board

directives, and Mayor's ratification evidence adoption"; the "City conditions

funding on compliance with unconstitutional policies"; and "Deliberate

indifference: enforcing a blanket ban without process"), but these phrases are

merely consistent with liability and essentially are nothing more than a 'formulaic

recitation of the elements' for a § 1983 claim. *Iqbal*, at 679, 681. (Doc. 2 at 1, 3, 5)

McKenzie does not allege what specific City policy, custom or practice, or

ratification by the City officials was a moving force behind his alleged

constitutional violations. Nor, aside from a single statement, does he adequately

plead deliberate indifference, which "is a stringent standard of fault, requiring

proof that a municipal actor disregarded a known or obvious consequence of his

action." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Therefore,

McKenzie fails to allege sufficient facts to support a reasonable inference that

either City policies or deliberate indifference by City officials were the "moving

force" behind his constitutional deprivations, and his claims should be dismissed.

## VI.  McKenzie's Montana constitutional claims fail for failure to state claims.

McKenzie alleges a variety of Montana constitutional violations, including

Article II, §§ 4 (individual dignity), 10 (right to privacy), 11 (searches and

seizures), 12 (right to bear arms), 16 (administration of justice), 17 (due process of

law), 26 (trial by jury). These claims fail for multiple reasons and should be

dismissed.

First, with two exceptions, his Complaint contains almost no supporting law nor any legal analysis for how his pled facts are violations of the Montana Constitution. His Montana constitutional claims are simply "corresponding provisions of the Montana Constitution" which are tacked onto his federal claims with no explanation or analysis. (Doc. 2 at 1.) There is no "short and plain statement of the claim" showing that McKenzie is entitled to relief. (Doc. 2 at 2.) *See* Fed. R. Civ. P. 8. Even if he did articulate a claim (and he does not) McKenzie does not allege any mechanism by which the City would be liable under state law for Montana constitutional violations by private actors (essentially, any acts aside from those by Officer Doe). *See Kirtley*, 326 F.3d at 1092 (§1983 applies to federal rights attributable to the government). Furthermore, the actions of Officer Doe do not violate the Fourth Amendment or Montana's constitutional provisions (see Section II(B), above) and Officer Doe is only named in her individual capacity.

The first exception to McKenzie's lack of legal support for his Montana constitutional claims - that "Montana constitutional carry excludes certain sensitive places—not communal shelters" is unsupported by any case law or statutory law. (Doc. 2 at 2.) Mont. Code Ann. § 45-8-328 criminalizes carrying concealed weapons in certain prohibited places. The statute does not prohibit private entities from restricting concealed carry of firearms in their place of business.

McKenzie's second citation to support his Montana constitutional claims is "Dorwart v. Caraway, 815 P.2d 236 (Mont. 1991)" (Doc. 2 at 2.) But *Dorwart v. Caraway* held that "voluntary and knowing consent" is a well-established exception to the warrant requirement for searches under the Montana and United States constitution. 966 P.2d 1121, 1131 (Mont. 1998).[4] As stated above, and unlike in *Dorwart*, McKenzie clearly consented to Black Knight's search of his bed and locker. Thus, *Dorwart* does not support McKenzie's Montana constitutional law claims.

Even if McKenzie did sufficient plead his Montana constitutional law claims, his claims for Article II, §§ 10 (right to privacy), 16 (administration of justice), and 26 (trial by jury) should be dismissed under the explicit textual source rule, which prohibits plaintiffs from "doubling up" their multiple constitutional law claims from a single tortious act. *Peschel v. City of Missoula*, 664 F.Supp.2d 1149, 1162 (D. Mont. 2009) (plaintiff's generalized claims for cruel and unusual punishment arising from the plaintiff's arrest dismissed where the more explicit claim for excessive force applied). The explicit textual source rule provides that a court must assess a claim under "an explicit textual source" of the rights in the Constitution, where applicable, and avoid analyzing the claim under a "more

---

[4] Case law research did not reveal a *Dorwart v. Caraway* case with McKenzie's original citation.

generalized" source. *Gregory v. State*, CV-20-51-GF-BMM, 2022 U.S. Dist. LEXIS 21424 at *6 (D. Mont. 2022) (Montana constitutional claims for privacy and due process violations dismissed).

Here, McKenzie makes four U.S. constitutional law claims (Second Amendment, Fourth Amendment, and Fourteenth Amendment (due process and equal protection)) but seven Montana constitutional law claims. McKenzie's claims which do not match his federal constitutional law claims (Article II, §§ 10 (right to privacy), 16 (administration of justice), 26 (trial by jury)) should thus be dismissed in favor of the more explicit claims which match his specific federal claims: Article II, §§ 4 (individual dignity), 11 (searches and seizures), 12 (right to bear arms), and 17 (due process of law).

Lastly, even if McKenzie did adequately plead his Montana constitutional law claims, those protections are largely concomitant with those vindicated by the United States Constitution. *See*, *e.g.*, *Wilson v. State*, 249 P.3d 28, 33 (Mont. 2010) ("We have found it proper to rely on federal jurisprudence as persuasive authority for interpreting a provision of the Montana Constitution that is similar to a provision of the federal constitution"). Therefore, McKenzie's Montana constitutional law claims fail for the same reasons identified above.

For the reasons given above, McKenzie's Montana constitutional law claims should be dismissed.

## VII. McKenzie's injunctive relief claims should be dismissed as moot.

When ruling on a Rule 12(b)(6) motion to dismiss, a court may consider certain materials—including matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-908 (9th Cir. 2003); Fed. R. Civ. P. 12(d). Under Rule 201(b) of the Federal Rules of Evidence, a court can judicially notice a "[f]act that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Consistently, "a court may take judicial notice of matters of public record." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).

Here, the City requests judicial notice of a public record: a letter, dated March 7, 2025, from Missoula City Mayor Angela Davis, which informed members of the public near the Shelter that it would close by August 2025. Attached as **Exhibit A**. The Shelter is closed, and thus McKenzie's requested injunctive relief in regard to the Shelter should be dismissed as moot.

## CONCLUSION

For the reasons stated above, McKenzie's claims should be dismissed in full.

DATED: November 7, 2025

BOONE KARLBERG P.C.

/s/ *Karston E. Erickson*
Natasha Prinzing Jones
Tracey Neighbor Johnson
Karston E. Erickson
*Attorneys for Defendants City of Missoula,*
*Missoula City Council and Major Andrea*
*Davis*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2) of the Federal Rules of Civil Procedure, I

certify that this brief, excluding the caption, table of contents, table of authorities,

index of exhibits, and certificate of compliance, complies with the word limit of

not more than 6,500 words, containing 6,370 words according to the word count

calculated by Microsoft Word.

DATED:  November 7, 2025

BOONE KARLBERG P.C.

/s/ *Karston E. Erickson*
Natasha Prinzing Jones
Tracey Neighbor Johnson
Karston E. Erickson
*Attorneys for Defendants City of Missoula,*
*Missoula City Council and Major Andrea*
*Davis*

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that a copy of the foregoing was served

by electronic means to all parties noted in the Court's ECF transmission facilities.

DATED: November 7, 2025

BOONE KARLBERG P.C.

*/s/ Karston E. Erickson*
Natasha Prinzing Jones
Tracey Neighbor Johnson
Karston E. Erickson
*Attorneys for Defendants City of Missoula,
Missoula City Council and Major Andrea
Davis*

# EXHIBIT A



# A Letter to the Johnson Street Neighbors

March 7, 2025

Dear Neighbor,

I am writing to inform you of a significant change that will be taking place in our community, specifically regarding the Johnson Street Temporary Emergency Shelter. As someone who lives near this facility, I want to ensure you have the information you need and understand the steps being taken to support the people who rely on the shelter.

Due to the exhaustion of federal funding, the City of Missoula has made the difficult decision to close the Johnson Street Emergency Shelter by August 2025. By way of background, the shelter was established during the pandemic to provide essential support when other local services were reduced due to health concerns. It has been an important resource for many, and we are incredibly grateful to the Poverello Center, staff, volunteers, and partner organizations for their ongoing efforts to support our unhoused neighbors.

With the federal funding now depleted, we have carefully planned a phased closure to allow enough time for shelter guests to transition into more stable housing. The closure will take place between April and August 2025, with the shelter's capacity gradually reduced starting on April 1, 2025. During this time, the City will be working intensively to connect as many shelter guests as possible with stable housing, support services, and, where appropriate, relocation assistance.

To achieve this, we are launching a "housing sprint"—an intensive effort to help shelter guests find stable housing solutions before the shelter closes. This includes:

- Assistance with securing identification, rental applications, and housing.
- Referrals to substance use and medical services.
- Transportation support for those needing help reuniting with stable support systems.
- Housing-focused case management to maximize the number of successful housing placements.

We are committed to supporting individuals throughout this process by providing rental assistance, case management, and connecting them with local service providers and resources. The goal is to minimize displacement and ensure that as many people as possible secure positive solutions before the shelter's closure.

The Missoula City Council passed a resolution in August of 2023 with a goal of deconstruction of all buildings on this site by fall of 2026. I am setting a goal of deconstructing and removing the shelter facility by fall of 2025. We are currently undergoing a [public engagement process for the North MRL Triangle](#) where we are seeking ideas and comments to determine future uses. We hope you will participate!

The City will continue enforcing the updated outdoor sheltering ordinance. The goal is to ensure public spaces remain safe while also working toward long-term housing solutions. Please reference the [Johnson Street Resource List](#) for guidance about who to call with specific questions related to the shelter. If you witness dangerous or illegal activity, please contact 911.

I understand that this news may raise questions, and I want to assure you that the City is dedicated to managing this transition carefully, safely, and compassionately. You can find more information and [FAQs](#) about this transition on the [City's website](#). We welcome your continued support as we all work together to help our most vulnerable neighbors during this time of change.

Thank you for your understanding and for being an important part of this community.

Sincerely,

Andrea Davis

Mayor

---

 Share on Facebook      Share on Twitter      Share via Email

Copyright © 2024 City of Missoula. All Rights Reserved.
435 Ryman Street Missoula, MT 59802

Powered by
